**In re the Marriage of Thomas R. ANGIER, petitioner, Respondent,**

v.

**Carol Ann ANGIER, Appellant.**

**No. C6–87–1158.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Gary L. Pringle, Monticello, for Thomas R. Angier, petitioner, respondent.

Randall T. Skaar, Skaar & Richards, P.A., Buffalo, for appellant.

Considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

This appeal is brought under Minn.R.Civ. App.P. 103.03(e) from an order denying a motion to reopen a judgment and decree. We affirm.

## FACTS

The marriage of appellant Carol Angier and respondent Thomas Angier was dissolved pursuant to stipulation, executed in September and October 1985, and incorporated into the October 16, 1985, judgment and decree. The provisions dealing with custody, child support and certain property distributions are not at issue in this appeal. Two provisions which awarded the homestead to the respondent and $6,000 cash to the appellant are, however, challenged.

The homestead, a hobby farm, was purchased on contract for deed for $59,000 in August of 1980. Pursuant to the dissolution decree, respondent was awarded all of appellant's interest in the home. In return, appellant was awarded a cash settlement of $6,000 to be paid within 90 days of the entry of the judgment and decree if respondent could obtain credit. The decree also provided:

> If the [respondent] cannot obtain such credit, he will obtain two letters of rejection and will furnish them to the [appellant].

Appellant was not awarded a lien on the home in the event respondent did not pay the cash.

On January 15, 1986, ninety-two days after entry of the judgment, respondent gave appellant two letters of rejection dated September 25, 1985, and November 4, 1985. The September letter rejected respondent's request for a $20,000 loan. While the November letter did not indicate the size of the requested loan, it refused an application for a first mortgage on the homestead.

Appellant brought a motion at the end of January 1986, in which she asked the court to impose a lien on the homestead equity because of respondent's failure to pay the $6,000 cash. However, on February 3, 1986, respondent filed a Chapter 7 bankruptcy petition in federal bankruptcy court listing the $6,000 debt to appellant. Appellant's attorney learned subsequently of the

bankruptcy petition and of the stay of appellant's motion before the district court. In an attempt to verify the hearing date by telephoning the bankruptcy court, the attorney spoke to the wrong office and was told no bankruptcy petition had been filed. Consequently, the appellant's motion to impose a lien on the homestead equity was granted by default on February 5, 1986. Upon discovery that, indeed, an automatic stay was in effect in bankruptcy court, the parties' attorneys executed a stipulation to vacate the amended judgment which had been entered as a result of the February 5, 1986, order.

Appellant obtained a second attorney and brought another motion on November 24, 1986, seeking amendment of the decree. Respondent replied and attached affidavits from two attorneys in support of his contention that the stipulation was properly negotiated. The first attorney stated:

2. That there were extensive negotiations between the parties through their attorneys regarding a property settlement which would involve the homestead real estate.

3. That on several occasions your affiant, on behalf of the [respondent], proposed a property settlement which would result in the purchase by [respondent] of the [appellant's] interest in the hom[e]stead real estate and other assets by an installment purchase with the homestead real estate securing the payments.

4. That all proposals in the nature of installment payments were rejected by [appellant] and she insisted on a cash settlement.

5. That the settlement ultimately arrived at called for a cash payment by [respondent] to [appellant] and the homestead was not offered by your affiant or [respondent] as security nor was the same requested as security by [appellant] or her counsel.

6. That the terms and condition[s] of a final stipulation of the parties was discussed in open court and it was then followed up by a written stipulation which incorporated all terms agreed to on the record.

7. That to the best of your affiant's knowledge there was no discussion had on the record in open court regarding any security for the property settlement payment of $6,000.00 due [appellant].

The second attorney stated:

4. That the [appellant] had the opportunity to negotiate the type of settlement she preferred in the dissolution proceeding and chose to receive an unsecured obligation of $6,000.00 from the [respondent].

Respondent's attorney maintained that appellant should have objected to the discharge of the $6,000 debt in the bankruptcy petition. However, appellant's accompanying affidavit stated she knew nothing of the bankruptcy petition.[1] The trial court denied appellant's motion to vacate the property settlement on February 20, 1987. On July 10, 1987,[2] appellant filed her appeal from the February 1987 order.

## ISSUE

Did the trial court err when it declined to modify the October 1985 judgment and decree?

## ANALYSIS

■ Property divisions are final upon the expiration of the ninety day appeal period. *See, e.g., Stolp v. Stolp*, 383 N.W.2d 409, 411 (Minn.Ct.App.1986). The trial court has inherent power to revoke a property settlement only when the circumstances surrounding entry of the judgment and decree amount to fraud upon the court and the administration of justice. *Lindsey v. Lindsey*, 388 N.W.2d 713, 716 (Minn. 1986). A property settlement may not be vacated pursuant to Minn.R.Civ.P. 60.02. *Id.*

1. We agree with respondent that any remedy appellant may have on this issue is with the federal bankruptcy court.

2. Notice of filing of the February 20, 1987, order was never served upon appellant. Therefore, the 30 day appeal period under Minn.R. Civ.App.P. 104.01 never commenced.

Appellant maintains the September 1985 letter rejecting respondent's request for a $20,000 loan demonstrates that the stipulated property settlement was obtained by fraud. Minnesota has not defined "fraud upon the court." It is fraud connected with the presentation of a case to the court, and differs from the "intrinsic or extrinsic" fraud envisioned by clause (3) of Minn.R.Civ.P. 60.02. 2A D. Herr & R. Haydock, *Minnesota Practice*, § 60.24 (1985). Dissolution judgments have been vacated for "fraud upon the court." *See Cahaley v. Cahaley*, 216 Minn. 175, 12 N.W.2d 182 (1943) (where counsel for the husband had promised wife an extension of time to answer but then obtained a default judgment); *Berg v. Berg*, 227 Minn. 173, 34 N.W.2d 722 (1948) (where the wife claimed husband had forced her to stipulate to a default judgment by means of threats of physical harm and by service upon her of allegedly defamatory affidavits of proposed witnesses); *Schroetke v. Schroetke*, 365 N.W.2d 380 (Minn.Ct.App.1985) (where husband allegedly fraudulently misrepresented to wife the extent of his child support obligations and had intimidated her into believing that if she obtained counsel he would prevent her from obtaining custody of the child).

Appellant contends the withholding by respondent of the letter refusing him a $20,000 loan during the negotiation of the property settlement amounts to "fraud upon the court." We cannot agree. This court has held that failure by one party to disclose pertinent information to a proceeding is not "fraud upon the court." *Carlson v. Carlson*, 371 N.W.2d 591, 595 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985). Moreover, the *Lindsey* court held that the party seeking vacation must demonstrate extraordinary circumstances which precluded an ability to "fairly and reasonably understand the matters under consideration" at the time of the dissolution. *Lindsey* at 716. In this case, appellant has not demonstrated such egregious circumstances as to warrant vacation.

The judgment and decree here incorporated the stipulation in its entirety. In such circumstances, this court may treat the trial court's refusal to vacate the judgment as refusal as well to set aside the stipulation. *Kroeplin v. Haugen*, 390 N.W.2d 872 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Sept. 25, 1986). We, therefore, will extend our review to the circumstances surrounding the parties' stipulation.

A stipulation is a favored means of expediting litigation in dissolution actions and is treated as a binding contract which cannot be repudiated without the parties' consent. In exceptional circumstances, a trial court may set aside a stipulation for fraud, duress or mistake. *Pekarek v. Wilking*, 380 N.W.2d 161, 163 (Minn.Ct. App.1986); *see also Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.Ct.App.1984). A trial court's refusal to vacate a stipulation will not be disturbed on appeal absent an abuse of discretion. *Id.* at 466.

For a stipulation to stand, "a meeting of minds on the essential terms of the agreement" must have occurred. If the agreement was improvidently made, it may be vacated. *John v. John*, 322 N.W.2d 347, 348 (Minn.1982). In this case the requirements for a properly entered stipulation were met: (1) appellant was represented by competent counsel; (2) extensive and detailed negotiations occurred during which appellant insisted on receiving $6,000 cash and agreed to the terms for its payment; (3) the parties agreed to the stipulation in open court; and (4) when questioned by the judge, appellant made no claim that she did not understand the terms of the stipulation or consider them unfair and inequitable. *See Pekarek* at 163.

Indeed, appellant does not challenge the integrity of the procedure by which the stipulation was reached and was incorporated into the decree. Rather, she maintains that respondent's concealment of the loan refusal while negotiating the terms of the stipulation requires the court to set it aside. Again, we cannot agree.

At the time of the negotiations, respondent had one of the two required letters of refusal which the parties agreed were sufficient to relieve him from the duty to pay appellant $6,000 within 90 days of the entry of the decree. The letter refused respondent a loan of $20,000. We recognize that refusal was no indication that a request for $6,000 would be similarly refused. However, at most, respondent misled appellant. Furthermore, both parties agree that the duty to pay the sum was not extinguished by failure to pay within 90 days; the loan refusals merely permitted respondent an extension of the time within which to pay appellant. Respondent was relieved of his duty to pay appellant only through discharge of the debt in bankruptcy.

Finally, respondent and his attorneys maintain that appellant was offered a lien on the homestead but refused it insisting upon the cash settlement. Appellant does not challenge this claim. Although we are not unsympathetic with appellant's loss of the right to receive $6,000, we find no basis to set the stipulation aside, and conclude that relief for appellant, if any there be, must be sought from bankruptcy court.

## DECISION

The trial court did not err in refusing to vacate the property settlement, which awarded $6,000 cash to the wife in return for her interest in the homestead, where the evidence supported the propriety of the stipulation and the decree.

Affirmed.